UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

| | | |
|---|---|---|
| MOVI-E-TOWN, INC., | : | Case No. 04-20890T |
| *Debtor(s)* | : | |
| -------------------------------------------------------- | : | |
| SILVAN B. LUTKEWITTE, III, | : | |
| *Plaintiff(s)* | : | |
| *v.* | : | Adv. No. 05-2273 |
| MOVI-E-TOWN, INC. and | : | |
| COMMERCE BANK/HARRISBURG, N.A., | : | |
| *Defendant(s)* | : | |

**<u>ORDER</u>**

AND NOW, this   23rd   day of December, 2005, it is ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED and JUDGMENT ON THE COMPLAINT IS ENTERED AGAINST PLAINTIFF AND IN FAVOR OF DEFENDANTS as the Court finds that Plaintiff is not entitled to the relief sought in this adversary complaint since he failed to meet his burden of establishing that Defendant, Commerce Bank/Harrisburg, N.A. ("Commerce"), acted unreasonably when it declined to sign the final draft of the Assignment, Assumption and Modification Agreement presented to it for execution since neither the July 5, 2005 Consent Order,[1]

---

1. In fact, the July 5, 2005 Consent Order does not contain any provisions which even remotely discuss the issue of Commerce assigning or transferring its loan or loan documents to Mid Penn Bank. Moreover, the evidence established that as of July 1, 2005, counsel for Mid Penn Bank, Shaun R. Eisenhauer, Esquire ("Mr. Eisenhauer"), was under the impression that the U.S.D.A. Guaranty could be transferred from Commerce to Mid Penn Bank without assigning or transferring the underlying loan documents. Notes of Deposition

the Lutkewitte Second Amended Plan of Reorganization, the Lutkewitte Second Amended Disclosure Statement, nor Pennsylvania law, see Cable & Associates Ins. Agency, Inc. v. Commercial National Bank of Pennsylvania, 875 A.2d 361 (Pa. Super 2005); see also Bohm v. Commerce Union Bank of Tennessee, 794 F. Supp. 158, 163 (W.D. Pa. 1992); Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank and Trust Co, 560 A.2d 151, 153-54 (Pa. Super. 1989),[2]

---

Testimony of Mr. Eisenhauer, November 8, 2005 ("N.D.T.") at 8-11. It was not until approximately July 12, 2005 that Mr. Eisenhauer became aware that an assignment or transfer of the loan documents might be necessary. N.D.T. of Mr. Eisenhauer at 10 (where Mr. Eisenhauer states, "As I indicated in this e-mail [dated July 12, 2005], it had been suggested that the loan documents would have to transfer. I was hopeful that that would not have to happen because I saw that as making this more complicated."). In fact, a review of Mr. Eisenhauer's July 12, 2005 email to Mr. Persun reveals that Mr. Eisenhauer had serious questions concerning the ability of Commerce to assign or transfer its loan documents to Mid Penn Bank. See Exhibit CB-1, Tab 2, July 12, 2005 e-mail from Mr. Eisenhauer to Mr. Persun wherein Mr. Eisenhauer writes, "I am still trying to find someone at the USDA to help me understand how this process [the USDA Guaranty transfer process] works. I fear that we may be required to take an assumption of the loan rather than a transfer of the guaranty, but of course we can't assume the loan when we have a new borrower." Moreover, even if counsel for all parties contemplated as of July 5, 2005 that there might have been a possibility that the U.S.D.A would request that the loan documents be assigned or transferred, it is abundantly clear that the issue of the assignment or transfer of the loan documents was not discussed during the June 28, 2005 hearing and was not included in the July 5, 2005 Consent Order. In addition, the evidence further established that after the hearing was held on June 28, 2005 and the substance of the parties' Stipulation was put on the record, counsel for Plaintiff, Robert W. Pontz, Esquire ("Mr. Pontz") approached Mr. Persun and advised him that "'he or we,' I'm not sure which, 'may want to transfer the guaranty,' to which I replied, 'I've never heard of that and I do not know if you can do it, but Commerce Bank will not assign its loan or loan documents.'" Notes of Testimony, November 9, 2005 Trial at 1:31-1:32; see also Notes of Testimony, November 23, 2005 Trial at 9:43-9:44. Mr. Persun further testified that on July 1, 2005, he received a telephone call from Mr. Eisenhauer concerning the transfer of the U.S.D.A. Guaranty and that during this conversation, Mr. Persun advised Mr. Eisenhauer that Commerce was not going to transfer its loan or its loan documents. Notes of Testimony, November 23, 2005 Trial at 9:45-9:47. Hence, we find that as neither Plaintiff nor his counsel took steps to insure that the July 5, 2005 Consent Order required that Commerce assign or transfer its loan or loan documents to Mid Penn Bank, Plaintiff assumed all risks regarding whether Commerce would thereafter agree to such an arrangement when it was not memorialized in the July 5, 2005 Consent Order. Consequently, we further find that as the July 5, 2005 Consent Order did not require that Commerce assign or transfer its loan documents, Commerce did not act unreasonably when it refused to do so. For all of these reasons, we deny Plaintiff's motion for a preliminary injunction and enter judgment on the complaint in favor of Defendants.

2. We find that United States District Judge James Knoll Gardner in Bedrock Stone and Stuff, Inc. v. Manufacturers and Traders Trust Co., No. Civ. A. 04-CV-02101, 2005 WL 1279148 at *7-8 (E.D. Pa. May 25, 2005) made clear that while he concluded that the Pennsylvania appellate courts would hold that

> a duty of good faith and fair dealing is inherent in every contract ... [my prediction] should

required that Commerce assign or transfer its loan or loan documents to Mid Penn Bank.[3]


Reading, PA

                                            THOMAS M. TWARDOWSKI
                                            United States Bankruptcy Judge

---

> not be misinterpreted to imply that a duty of good faith and fair dealing should override the express terms of a contract. 'Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts.' (citation omitted). 'The question of what constitutes a breach of the covenant will depend greatly upon the scenario presented and will vary from situation to situation.' (citation omitted). [However,] [t]he covenant of good faith may be breached when a party **unreasonably** exercises discretion authorized in a contract. (emphasis supplied).

On the record before me, as I find that Commerce did not act unreasonably when it refused to assign its loan and/or loan documents to Mid Penn Bank, it automatically follows that Commerce did not breach any duty or covenant of good faith or fail to deal fairly herein.

3. As a result, we find that Plaintiff was not in a position to comply with paragraph 1 of the July 5, 2005 Consent Order since he was not able to complete the closing upon the Mid Penn Bank loan by August 1, 2005. Therefore, pursuant to paragraph 3 of the July 5, 2005 Consent Order, which states that

> [i]f [Plaintiff] does not complete Loan Closing and issuance of payments on or before August 1, 2005, as provided under paragraph 1 of this Order, then immediately and without further notice or hearing (a) all pending objections to the Debtor Plan shall be deemed withdrawn, (b) the Lutkewitte Plan shall be deemed withdrawn and (c) the Debtor Plan shall be deemed confirmed pursuant to Section 1129 of the Code as of August 2, 2005...

Accordingly, we shall enter an Order forthwith in the main bankruptcy case (Case No. 04-20890T) denying Plaintiff/Mr. Lutkewitte's Motion, filed on August 1, 2005, for Contempt of Court, to Compel Compliance with the July 5, 2005 Consent Order, for Enforcement of the July 5, 2005 Consent Order and for Plan Confirmation.